UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |  | |
|---|---|---|---|
| JOHNNIE JAYROE, III, | § | | |
| | § | | |
| Plaintiff, | § | | |
| VS. | § | CIVIL ACTION NO. 3-12-261 | |
| | § | | |
| TRANSPORT DESIGNS, INC., *et al*, | § | | |
| | § | | |
| Defendants. | § | | |

## **MEMORANDUM AND ORDER**

This case arises from an accident involving two eighteen-wheelers in Wyoming. Plaintiff Johnnie Jayroe III, a resident of Texas, alleges that the driver of the other truck, John C. Hope Jr., was at fault. Jayroe filed this suit against Hope's employer, Defendant Transport Designs, Inc., (TDI), an interstate transportation company based in Minnesota. After removing the case to this Court, TDI filed a motion to dismiss for lack of personal jurisdiction on the ground that it lacks "continuous and systematic general business contacts" in this forum. Having thoroughly reviewed the parties' pleadings and briefing, the evidence, and the law, this Court determines that it lacks general personal jurisdiction over TDI. Accordingly, TDI's motion to dismiss is **GRANTED**.[1]

---

[1] TDI also argued that this case should be dismissed for improper venue under 28 U.S.C. § 1391 or transferred for convenience purposes under 28 U.S.C. § 1404. At the October 3, 2012 hearing, the Court noted that TDI's voluntary removal of the action to this Court likely precluded a finding of improper venue. *See Masco Operators, Inc. v. Thompson Tractor Co., Inc.*, No. G-12-152, 2012 WL 3028075, at *3 (S.D. Tex. July 23, 2012) (noting that, in cases removed from

## I. BACKGROUND

On June 5, 2011, Jayroe was driving an eighteen-wheel tractor-trailer rig westbound on Interstate 80 in Laramie County, Wyoming when his vehicle was struck from behind by an eighteen-wheel tractor-trailer rig allegedly owned by TDI. TDI's driver was killed in the collision; Jayroe was immediately treated for his injuries in Wyoming and then returned to Texas where the majority of his treatment took place. The parties dispute who was at fault. Jayroe contends that the police report's description of the event as a rear-end collision establishes Defendants' liability, whereas TDI contends that Jayroe was partially at fault for driving well below the speed limit.

With respect to TDI's presence in this forum, the parties present a relatively small universe of evidence, consisting primarily of deposition testimony from TDI's Vice President of Sales and Marketing, an affidavit of TDI's Safety

---

state court, venue is automatically proper in the federal district court where the state action was pending) (citations omitted). TDI conceded this point in its reply brief, though it still argued that venue transfer was appropriate for convenience reasons. *See* Docket Entry No. 14 ¶ 10. Jayroe, however, misconstrued the legal issue in *Masco* and filed a supplemental brief arguing that TDI's voluntary removal of the action conferred this Court with personal jurisdiction. *See* Docket Entry No. 16 ¶¶ 2–4. Unlike with venue, "[r]emoval, in itself, does not constitute a waiver of any right to object to lack of personal jurisdiction." *Nationwide Eng'g & Control Sys., Inc. v. Thomas*, 837 F.2d 345, 347–48 (8th Cir. 1988). The Court need not reach TDI's arguments regarding convenience of venue, given its holding that personal jurisdiction is lacking. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum.") (citations omitted).

Director, and TDI's webpage.[2] The evidence shows that TDI has some contacts with Texas. TDI employs thirteen Texas residents out of its pool of 179 company drivers and 105 owner-operators. Docket Entry Nos. 12-4 at 59:1–4, 12-6 at 137:18–138:2. And its website shows that parts of Texas, including this forum, are within TDI's recruiting area, although no TDI representative "actually comes to Texas to recruit." Docket Entry No. 12-4 at 60:4–5; *Recruiting*, Transport Designs, Inc., http://www.transportdesigninc.com/recruiting.htm (last visited November 8, 2012). TDI also identifies Texas as within its service area and hauls an estimated $2 million worth of product through Texas each month. Docket Entry No. 12-6 at 141:16–142:18. Additionally, TDI has an agreement to use a factory yard in Dallas, where it may store its trailers for up to three days.

Figure 1: Recruiting map from TDI website.
http://www.transportdesigninc.com/recruiting.htm

Figure 2: Service map from TDI website.
http://www.transportdesigninc.com/



---

[2] The deposition transcripts can be found in Docket Entry Nos. 12-2–7 and the affidavit in Docket Entry No. 5-3. Jayroe objects to the affidavit as conclusory and including hearsay. The Court rejects these arguments and finds the affidavit testimony to be within the Safety Director's personal knowledge as required by Federal Rule of Civil Procedure 56(c)(4). Nonetheless, to the extent the affidavit testimony conflicts with evidence presented by Jayroe, the Court will resolve those factual disputes in favor of Jayroe. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000).

On the other hand, TDI points to substantial evidence showing limited contacts in Texas. Specifically, the evidence shows that TDI:

- is incorporated in Minnesota and has its principle place of business there;
- has no telephone directory listings or commercial listings in Texas, and has not advertised in local Texas media;
- has no bank accounts in Texas;
- has no offices in Texas;
- does not own or lease real property in Texas;
- has never sued anyone in Texas;
- has no Texas customers;
- has its dispatch center in Utah;
- has travelled roughly 3% of its total miles through Texas since January 1, 2011;
- does not haul intrastate in Texas;
- does not do regular maintenance in Texas; and
- does not have any licenses specific to Texas.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(2) Burden

The plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction when a nonresident defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "When the district court rules on a

motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)). "But the court is not obligated to credit conclusory allegations, even if uncontroverted." *Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*, No. H-10-1708, 2012 WL 590926, at *2 (S.D. Tex. Feb. 22, 2012) (citing *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001)).

### B. Personal Jurisdiction

Federal courts sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant and exercising such jurisdiction is consistent with due process. *Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004). Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Federal due process permits

the exercise of personal jurisdiction over a nonresident defendant when: (1) "the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state;" and (2) "the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Wilson*, 20 F.3d at 647).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Two recent Supreme Court decisions issued on the same day highlight the substantially higher degree of contacts needed to establish general jurisdiction, which is "all-purpose" and grants a court the power "to hear any and all claims against" a party regardless of where the events at issue took place, than specific jurisdiction, which is "case-linked" and grants a court only the power to hear "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Compare Goodyear Dunlop Tires Ops. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (ruling on general jurisdiction), *with J. McIntyre Mach., LTD. v. Nicastro*, 131 S. Ct. 2780, 2787–88 (2011) (ruling on specific jurisdiction).

In this case, Jayroe rightly does not contend that specific jurisdiction exists over TDI in Texas for a tort that occurred more than a thousand miles away in Wyoming, so the sole issue is general jurisdiction. A court has general jurisdiction

over a nonresident defendant "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851. "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).[3]

## III. ANALYSIS

Since the landmark *International Shoe* decision distinguished between specific and general jurisdiction, only three Supreme Court decisions have considered whether an out-of-state corporate defendant's instate contacts were sufficient to justify the exercise of general jurisdiction over claims unrelated to those contacts—*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408 (1984), and *Goodyear*, 131 S. Ct. 2846. Review of those cases demonstrates that TDI's

---

[3] If a plaintiff establishes minimum contacts, the burden then shifts to the defendant to show that asserting jurisdiction would offend traditional notions of fair play and substantial justice. *Mobius*, 2012 WL 590926, at *3 (citations omitted); *see also Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (identifying factors to consider in this fairness inquiry). The Court does not reach that issue given its holding that Jayroe does not establish that TDI has sufficient contacts in Texas.

contacts are not so "continuous and systematic as to render [it] essentially at home" in the forum. *Goodyear*, 131 S. Ct. at 2851.

The *Perkins* decision "remains 'the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.'" *Id.* at 2856 (citation and brackets omitted). The defendant in *Perkins* was a Philippine mining corporation, sued in Ohio, that had ceased activities in the Philippines and whose president and general manager had relocated to Ohio during World War II. *Perkins*, 342 U.S. at 447–49. The Court ruled that it would not violate due process for Ohio to adjudicate the controversy, because the president maintained a corporate office in Ohio where he kept the records of the corporation, conducted director's meetings, and made all key business decisions. As such, the president had "carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company." *Id.* at 448.

By contrast, in *Helicopteros*, the Supreme Court found a Colombian corporation's contacts in Texas to be insufficient to support an exercise of general jurisdiction over a claim involving a helicopter crash in Peru. *Helicopteros*, 466 U.S. at 418–19. Like TDI, the defendant in *Helicopteros* had contacts with Texas: it purchased over $4 million of helicopters and equipment from a Texas company; it sent its prospective pilots to Texas for training; it sent management and maintenance personnel to Texas for technical consultations; and it received a check

for over $5 million that was drawn upon a Texas bank. *Id.* at 411. Nonetheless, the Supreme Court held that those contacts were not substantial enough to justify general jurisdiction, particularly given that the defendant "[did] not have a place of business in Texas and never [had] been licensed to do business in the State." *Id.* at 416.

In *Goodyear*, the Supreme Court relied on the *Perkins* and *Helicopteros* decisions in ruling that foreign subsidiaries of Goodyear did not maintain sufficient "continuous and systematic" contacts to give a North Carolina court general jurisdiction to hear a case involving a bus accident in France. *Goodyear*, 131 S. Ct. at 2857. Even though the defendants had indirectly placed goods in the stream of commerce in North Carolina, they did not design, manufacture, or advertise their products in North Carolina, and they did not solicit business in North Carolina or sell tires to North Carolina customers. *Id.* at 2852. The Court noted that "[u]nlike the defendant in *Perkins*, whose sole wartime business activity was conducted in Ohio, petitioners are in no sense at home in North Carolina." *Id.* at 2857.

TDI's contacts with Texas more closely resemble the defendants' forum-state contacts in *Helicopteros* and *Goodyear* than those in *Perkins*; they fall short of the continuous and systematic general business contacts necessary for this Court to entertain suit against them on claims not arising out of this forum. *See id.* The

undisputed evidence reveals that TDI is a Minnesota corporation that does not have offices, bank accounts, or business records in Texas; does not own real property in Texas; does not advertise or solicit business in Texas; and has not brought suit in the Texas courts. Even though TDI conducts interstate business through Texas, TDI is "in no sense at home" in Texas given that it has no Texas customers, conducts no intrastate business in Texas, and only travels 3% of its miles through Texas. *Id.* TDI's other contacts with Texas—namely, its employment of 13 Texas residents, passive recruitment of Texas residents along with residents of 26 other states, and use of a factory yard in Dallas—not only pale in comparison to the contacts in *Perkins*, in which Ohio was essentially the corporation's principal place of business, but also to the contacts in *Helicopteros*, in which equipment purchases and training programs in Texas were insufficient to establish general jurisdiction. Moreover, the Fifth Circuit found general jurisdiction lacking over an interstate transportation company that had arguably even more substantial contacts with the forum state than TDI. *See Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (finding no general jurisdiction over company that "routinely arrange[d] and receive[d] interline shipments to and from Texas and apparently sen[t] sales people to the state on a regular basis to develop business, negotiate contracts, and service national accounts").

TDI's admission in a 2007 case in the Eastern District of Texas that it is "doing business in Texas," a fact on which Jayroe places great emphasis, is inconsequential. *See* Docket Entry No. 12-1 ¶ 3. That case involved an accident that occurred in Texas, thus vesting the court with specific personal jurisdiction over TDI. TDI did not admit to general jurisdiction. *See id.* More fundamentally, "doing business in Texas" is not synonymous with having contacts "so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851. It is undisputed that TDI does business in Texas; however, that business is not substantial enough to empower this Court with jurisdiction over claims against TDI unrelated to this state.

### IV.  CONCLUSION

In sum, Jayroe has not made a *prima facie* showing of general jurisdiction over TDI in Texas. Accordingly, TDI's Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 5) is **GRANTED**.

SIGNED this 9th day of November, 2012.

                                                                                  _____
                                                                                  Gregg Costa
                                                                                  United States District Judge